IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

PENNY SAUNDERS, INDIVIDUALLY AND
ON BEHALF OF THE ESTATE OF HER
DECEASED HUSBAND, STEPHEN
SAUNDERS, AND ON BEHALF OF HER
MINOR CHILD, BRANDY SAUNDERS                                              PLAINTIFF

VERSUS                                         CIVIL ACTION NO: 1:02cv42WJG-JMR

GULF COAST FABRICATION, INC., HALTER
MARINE, INC., SABRE PERSONNEL
ASSOCIATES, INC. AND LEXINGTON
INSURANCE COMPANY                                                         DEFENDANTS

MEMORANDUM OPINION

This cause is before the Court on the motion [34-1] for summary judgment filed by the Defendants pursuant to Federal Rule of Civil Procedure 56.  After due consideration of the pleadings, evidence of record, applicable law, and being otherwise advised in the premises, the Court finds as follows:

Statement of Facts

Plaintiff filed the Complaint on February 1, 2002, but due to the bankruptcies of Halter Marine, Inc. [Halter], and its subsidiary, Gulf Coast Fabrication, Inc. [Gulf Coast], the case was stayed until Plaintiff received relief from the Automatic Stay on April 1, 2004.  Plaintiff then filed the Amended Complaint on April 8, 2005, seeking damages for the death of her husband while working on Hull No. 299.  The Amended Complaint also seeks a declaratory judgment that Sabre Personnel Associates, Inc. [Sabre] is a proper party defendant due to an indemnity and

defense agreement between Sabre and Gulf Coast.  Further, Plaintiff asks this Court to declare that the policy issued to Sabre by Lexington Insurance Company [Lexington] covers the injuries sustained by Plaintiff's husband.

Plaintiff's husband, Stephen Saunders [Saunders], worked for Sabre, a manpower staffing company that provided workers to Halter and its subsidiaries and related companies, including Gulf Coast.  (Ct. R., Doc. 34, Exh. C.)  Saunders applied for a job with Sabre as a shipfitter and was assigned to work at Halter's Port Bienville Shipyard[1] starting on June 10, 1999.  (*Id.*) Saunders' work involved the construction of a hull that, when completed, would be a barge.  (*Id.*) On July 19, 1999, Saunders was working as part of the night time ship fitting crew on Hull No. 299 when he fell through an opening on the deck of the hull and died as a result of his injuries.  (Ct. R., Docs. 11 and 34, Exh. F.)

## Standard of Review

Summary judgment is appropriate when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law.  FED.R.CIV.P. 56(c).  All disputed facts are resolved in favor of the party opposing the summary judgment.  *Ameristar Jet Charter, Inc. v. Signal Composites, Inc.*, 271 F.3d 624, 626 (5th Cir. 2001).  The nonmoving party may not rely upon mere allegations or denials within the pleadings, but must come forward with specific facts showing the presence of a genuine issue for trial.  *Mercury Air Group, Inc. v. Mansour*, 237 F.3d 542, 548 (5th Cir. 2001).

---

[1] According to affidavits submitted by Defendants, Halter acquired the Port Bienville Shipyard from Gulf Coast prior to the accident in question.  (Ct. R., Doc. 34, Exhs. D and E.)

"Rule 56 contemplates a shifting burden: the nonmovant is under no obligation to respond unless the movant discharges [its] initial burden of demonstrating [entitlement to summary judgment]." *John v. State of Louisiana,* 757 F.2d 698, 708 (5th Cir. 1985). "Summary judgment cannot be supported solely on the ground that [plaintiff] failed to respond to defendants' motion for summary judgment." *Id.* at 709. Once a properly supported motion for summary judgment is presented, however, the nonmoving party must rebut with "significant probative" evidence. *Ferguson v. National Broadcasting Co., Inc.,* 584 F.2d 111, 114 (5th Cir. 1978).

Discussion

On April 8, 2005, Plaintiff filed her Amended Complaint seeking damages "pursuant to the General Maritime Law of the United States and Sections 905(b) and 933 of Title 33 of the United States Code, as well as any other federal or state laws or statutes that may be applicable." (Ct. R., Doc. 11, ¶ 15.) In response, Defendants filed the instant motion for summary judgment asserting immunity to the present suit pursuant to section 905(a) of the Longshore and Harbor Workers' Compensation Act. 33 U.S.C. § 905(a). Notably, Plaintiff did not respond to Defendants' arguments, asserting only that the case should be stayed 60 days to allow Plaintiff to seek relief from the Automatic Stay imposed by Sabre's bankruptcy. (Ct. R., Doc. 41.) Plaintiff asserts that because Gulf Coast and Sabre have a contractual indemnity and defense agreement the instant suit is related to Sabre's bankruptcy and thus, subject to the Automatic Stay.

The Court will not stay the instant matter. First, Plaintiff cited no authority that would require or persuade this Court to stay consideration of Defendants' motion for summary judgment. Second, Plaintiff provided no evidence or argument that Halter has made demand upon Sabre for defense and indemnity. Third, whether Sabre must provide defense and

indemnity to Halter is a matter between the two parties that may need to be litigated and is, as yet, uncertain. *See Vig v. Indianapolis Life Ins. Co.*, 336 B.R. 279, 286 (S.D. Miss. 2005) (Lee, J.) (discussing the uncertain nature of indemnity claims in relation to the exercise of bankruptcy jurisdiction). Finally, because the arguments raised by Defendants' motion for summary judgment apply equally to all Defendants, it is better and more efficient to resolve the issue of immunity at this juncture. *See Teel v. American Steel Foundaries*, 529 F. Supp. 337, 346 (D.C. Mo. 1981) (declining to stay case pursuant to Automatic Stay where arguments applied equally to defendants and dismissal was clearly warranted). Consequently, the Court will not stay consideration of Defendants' motion for summary judgment.

Defendants contend that section 905(a) provides immunity from the instant tort suit. Section 905(a) provides in pertinent part:

> The liability of an employer prescribed in section 904 of this title shall be exclusive and in place of all other liability of such employer to the employee, his legal representative, husband or wife, parents, dependents, next of kin, and anyone otherwise entitled to recover damages from such employer at law or in admiralty on account of such injury or death . . . .

33 U.S.C. § 905(a). There being no argument that the responsible party failed to secure payment of compensation as required by 33 U.S.C. § 904, the issue presented to this Court is whether Halter/Gulf Coast [referred to collectively as Halter] should be considered an employer pursuant to section 905(a).[2] Stated differently, whether Saunders was a borrowed-employee of Halter is a question of law for this Court to resolve. *Billizon v. Conoco, Inc.*, 993 F.2d 104, 105 (5th Cir. 1993).

---

[2] There is no dispute that Sabre was Saunders' employer.

On the issue of borrowed-employee status, the Fifth Circuit has set forth nine factors for consideration:

> (1) Who had control over the employee and the work he was performing, beyond mere suggestion of details or cooperation?
> (2) Whose work was being performed?
> (3) Was there an agreement, understanding, or meeting of the minds between the original and the borrowing employer?
> (4) Did the employee acquiesce in the new work situation?
> (5) Did the original employer terminate his relationship with the employee?
> (6) Who furnished tools and place for performance?
> (7) Was the new employment over a considerable length of time?
> (8) Who had the right to discharge the employee?
> (9) Who had the obligation to pay the employee?

*Billizon*, 993 F.2d at 105. The Court will examine each factor to determine whether Defendants have met their burden on summary judgment.[3]

As to each factor, the Court finds as follows:

1. Halter's foremen supervised, directed and instructed the contract laborers, including Saunders, and on the night of the accident, Michael Olcott was the night foremen supervising Saunders. Additionally, according to the agreement between Halter and Sabre, Halter maintained the right of control over the manner and details of the work to be performed by the contract laborers provided by Sabre.

2. While engaged as a shipfitter working on Hull No. 299, which would later become a barge, Saunders was performing work for Halter.

3. Halter and Sabre had a written agreement identifying Halter, for purposes of worker compensation statutes, as the "co-employer" of the contract workers provided by Sabre and identifying the contract workers as "borrowed servants" of Halter.

---

[3]Plaintiff provided no opposition to Defendants' legal arguments and factual assertions.

      4.  Saunders applied to work for Sabre, which supplied manpower to Halter, and there is no evidence that Saunders objected to his working conditions or situation.  Additionally, Saunders worked at Halter's shipyard for over a month, a period of time adequate for Saunders to assess the work situation.

      5.  Sabre did not supervise Saunders during his time with Halter, and there is no evidence that Sabre had any significant control over or relationship with Saunders, except to issue Saunders his paycheck.

      6.  Saunders furnished his own hand tools, but Halter provided cranes, welding machines, come-a-longs and other heavy equipment necessary to perform construction of the barge.  Further, Halter owned and operated the shipyard where Saunders worked.

      7.  Being only a month, Saunders' employment with Halter was not over a considerable length of time.

      8.  Halter had the right to prohibit Saunders' from performing work on its project, even though Saunders might retain his employment with Sabre.

      9. The agreement between Halter and Sabre provided that Halter would pay Sabre a sum computed on the number of hours worked by a contract laborer multiplied by an hourly rate.  Sabre would then pay Saunders his wages.

(Ct. R., Doc. 34, Exhs. C-F and H.)  Factors 1-6, 8 and 9 clearly weigh in favor of finding that Saunders was a borrowed-employee of Halter.  *See Lemaire v. Danos & Curole Marine Contractors, Inc.*, 265 F.3d 1059 (5th Cir. 2001); *Billizon*, 993 F.2d 104; *Sanders v. Halter Marine, Inc.*, No. 1:00cv319DMR-LG, slip op. (S.D. Miss. 2001) (Guirola, J.) (Ct. R., Doc. 34, Exh. A.)  Factor 7 is neutral because one month of employment is not a considerable length of

time. Such lack of considerable length, however, does not weigh against a finding of borrowed-employee status. *Capps. v. N.L. Baroid-N.L. Indus., Inc.*, 784 F.2d 615, 618 (5th Cir. 1986). Based on an examination of the facts in light of the nine factors and precedent pertaining thereto, the Court finds that Saunders was a borrowed-employee of Halter, entitling Halter to tort immunity as provided by section 905(a).

Although the exclusive remedy provided by section 905(a) affords Halter tort immunity, Plaintiff also cited section 905(b) as grounds for relief. Section 905(b) allows suits against the vessel as a third-party for injuries deriving from the negligence of the vessel. 33 U.S.C. § 905(b). For this section to warrant consideration in the instant matter, however, Hull No. 299 would need to qualify as a "vessel." *Richendollar v. Diamond M Drilling Co., Inc.,* 819 F.2d 124, 128 (5th Cir. 1987) ("[t]he sine qua non of § 905(b) statutory liability for vessel negligence is the presence of a vessel which admiralty regards as a separate entity distinct from its owner.").

In order for a structure to qualify as a vessel under section 905(b), it must be a vessel for purposes of maritime jurisdiction. *Rossetti v. Avondale Shipyards, Inc.*, 821 F.2d 1083, 1084-85 (5th Cir. 1987); *Richendollar,* 819 F.2d at 125. As outlined by the Fifth Circuit in *Richendollar*:

> Such a vessel must be capable of navigation or its special purpose use on or in water. We further hold that to be cognizable under § 905(b), a tort must occur on or in navigable waters subject . . . and there must be the traditional admiralty nexus.

819 F.2d at 125. Hull No. 299 does not meet this test. Although Plaintiff alleges in the Amended Complaint that Hull No. 299 was "a vessel in navigation" and "floating in navigable waters" (Ct. R., Doc. 11, ¶¶ 7 and 10), uncontested affidavits submitted by Defendants evidences that Hull No. 299 was incomplete, under construction and sitting ashore supported by concrete and wood supports on the date of the accident. (Ct. R., Doc. 34, Exhs. C and F.) Based on these

undisputed facts, Hull No. 299 was not on or in navigable waters, nor was it capable of navigation. Consequently, the Court finds that Hull No. 299 was not a vessel, and Plaintiff does not have a cognizable claim under section 905(b). *See Rossetti*, 821 F.2d 1083; *Richendollar*, 819 F.2d 124.

## Conclusion

For the foregoing reasons, the Court finds that there is no genuine issue of material fact and that Defendants are entitled to summary judgment. A separate summary judgment in conformity with and incorporating by reference the above Memorandum Opinion shall issue this date. Each party shall bear their respective costs associated with this motion.

THIS the 23rd day of June, 2006.

*Walter J. Gex III*
UNITED STATES SENIOR DISTRICT JUDGE